```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,          :     INFORMATION

          -v.-                     :     08 Cr.

MARTIN S. BODNER,                  :

                    Defendant.     :

- - - - - - - - - - - - - - - - -x
```

08 CRIM 282

### COUNT ONE
### (Mail Fraud)

The United States Attorney charges:

**Background**

1.  From in or about late March 2000, through on or about December 21, 2007, MARTIN S. BODNER, the defendant ("BODNER"), was employed by a major handbag design company (the "Handbag Design Company"), the headquarters of which were located in midtown Manhattan.

2.  Among other responsibilities, MARTIN S. BODNER, the defendant, supervised the Handbag Design Company's payroll. BODNER's supervision over his employer's payroll meant that BODNER could control the amounts that the Handbag Design Company paid to its employees via the outside company used to process the Handbag Design Company's payroll (the "Payroll Service Company").

3.  At all times relevant to this Information, the Payroll Service Company processed the Handbag Design Company's payroll through, among other means, frequent and routine telephone calls and other interstate wire communications between

the Payroll Service Company's facilities in New Jersey and BODNER located at the Handbag Design Company's offices in Manhattan, and electronic communications from the Payroll Service Company's facilities in New Jersey to the Payroll Service Company's facilities in California.

4.   When he commenced working for the Handbag Design Company in or about March 2000, MARTIN S. BODNER, the defendant, had a salary of approximately $155,000 per year.  Between 2001 and 2007, BODNER's legitimate compensation from the Handbag Design Company, that is, his salary plus discretionary bonuses awarded to him, was never more than approximately $267,500 per year.

5.   The Handbag Design Company terminated the employment of MARTIN S. BODNER, the defendant, as of approximately December 21, 2007.

### The Fraudulent Scheme

6.   Beginning in or about the middle of 2000, MARTIN S. BODNER, the defendant, embarked on a multi-faceted scheme to steal millions of dollars from the Handbag Design Company. During the course of his fraudulent scheme, between in or about the middle of 2000 and in or about the end of December 2007, BODNER stole over approximately $19,090,000 from the Handbag Design Company.

7. The amounts stolen by MARTIN S. BODNER, the defendant, were highly significant to the Handbag Design Company. For example, during calendar year 2006, BODNER stole more than approximately $3.5 million from the Handbag Design Company. The Handbag Design Company reported for the fiscal year ending March 31, 2007, which included three quarters of calendar year 2006, a net loss of approximately $2.76 million.

8. Among other means by which MARTIN S. BODNER, the defendant, stole from the Handbag Design Company were the following:

    a. BODNER, without permission from his superiors at the Handbag Design Company, secretly increased the amount of money that he was to be paid in salary and bonus via the Payroll Service Company. BODNER did so through interstate wire communications with the Payroll Company's facilities in New Jersey and also caused interstate wire communications between the Payroll Company's facilities in New Jersey and the Payroll Service Company's facilities in California.

    b. BODNER arranged to be reimbursed by the Handbag Design Company, via the Payroll Service Company, for phony expenses he purportedly had incurred in the course of his employment when, in truth and in fact, BODNER had never incurred such expenses on behalf of the Handbag Design Company. BODNER did so through interstate wire communications with the Payroll

Company's facilities in New Jersey and also caused interstate wire communications between the Payroll Company's facilities in New Jersey and the Payroll Service Company's facilities in California.

    c. BODNER added one of his sons to the payroll of the Handbag Design Company and arranged for his son to be paid, via the Payroll Service Company, a total of approximately $225,500 during the years 2004 and 2005 when, in truth and in fact, BODNER's son did not work for the Handbag Design Company at those times. BODNER did so through interstate wire communications with the Payroll Company's facilities in New Jersey and, in addition, caused interstate wire communications between the Payroll Company's facilities in New Jersey and the Payroll Service Company's facilities in California.

    d. BODNER issued, and caused the Handbag Design Company to issue, hundreds of checks to various payees. The great majority of these checks were for phony expenses that BODNER claimed to have incurred in the course of his employment at the Handbag Design Company when, in truth and in fact, BODNER had never incurred such expenses on behalf of the Handbag Design Company. The remainder represented funds that BODNER was simply transferring from the Handbag Design Company for BODNER's benefit and to the detriment of the Handbag Design Company. BODNER sent, and caused to be sent, most of these checks via United States

4

mail or private and commercial interstate carrier.

   e. Among other payees, BODNER issued, and caused the Handbag Design Company to issue, checks payable to:

    i. American Express, for the purpose of paying off BODNER's personal American Express card bills;

    ii. A luxury automobile dealership, to pay for an automobile for BODNER;

    iii. Two separate credit card issuers, for the purpose of paying off BODNER's personal credit card bills;

    iv. One of Bodner's sons;

    v. A property and casualty insurer for: (a) homeowner's insurance on a home owned by BODNER; (b) insurance on two apartments owned by BODNER; and (c) insurance on four automobiles owned by BODNER;

    vi. A person who had performed decorating service on behalf of BODNER; and

    vii. BODNER himself.

**Statutory Allegations**

  9. Between in or about the middle of 2000 and in or about the end of December 2007, in the Southern District of New York and elsewhere, MARTIN S. BODNER the defendant, unlawfully, wilfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, including a scheme and artifice to deprive another of the intangible right of honest services,

5

and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, placed in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by private and commercial interstate carrier, and knowingly caused such matter and thing to be delivered by mail and by such carrier according to the direction thereon and at the place at which it was directed to be delivered, to wit, on multiple occasions, BODNER sent, and caused to be sent, via the United States mail and private and commercial interstate carriers, checks that had been issued as a result of fraudulent requests for reimbursement for expenses that BODNER falsely claimed he had incurred in the course of his employment at the Handbag Design Company.

(Title 18, United States Code, Sections 1341, 1346, and 2.)

### COUNT TWO
### (Wire Fraud)

The United States Attorney further charges:

10. The allegations set forth in paragraphs 1 through 8 are repeated and realleged as if set forth fully herein.

11. Between in or about the middle of 2000 and in or about the end of December 2007, in the Southern District of New York and elsewhere, MARTIN S. BODNER, the defendant, unlawfully,

wilfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, including a scheme and artifice to deprive another of the intangible right of honest services, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wire communications, BODNER, without permission of the Handbag Design Company, fraudulently directed the Payroll Service Company to increase by a total of approximately $14,712,000 the amount of money that BODNER was to be paid by the Handbag Design Company.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

### FORFEITURE ALLEGATIONS

12. As a result of committing the offenses alleged in Counts One and Two of this Information, MARTIN S. BODNER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, property constituting, and derived from, proceeds obtained directly and indirectly as the result of such violations, including but not limited to the following:

      a.   at least $19,090,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense.

      b.   all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 17 Shorewood Drive, Port Washington, New York 11040;

      c.   all right, title, and interest in 400 East 56th Street, Apartment 33RS, New York, New York 10022, including all shares in Plaza 400 Owners Corp. and any proprietary leases associated with or allocated to such apartment;

      d.   all right, title, and interest in 370 East 76th Street, Apartment A807, New York, New York 10021, including all shares in Newport East, Inc. and any proprietary leases associated with or allocated to such apartment;

      e.   all United States or other currency, funds, securities, property, or other interests credited to the following account numbers at the following institutions:

         i.   838312772 held at JPMorgan Chase Bank;

         ii.   91053998365 held at JPMorgan Chase Bank;

         iii.   91053998301 held at JPMorgan Chase Bank;

    iv. 838605046301 held at JPMorgan Chase Bank;

    v. 20620394501 held at JPMorgan Chase Bank;

    vi. 228604628001 held at JPMorgan Chase Bank;

    vii. 838604018501 held at JPMorgan Chase Bank;

    viii. C1Q707040 held at Chase Investment Services Corp.;

    ix. EX 19697 held at UBS PaineWebber Inc.;

    x. 401(k) Plan account associated with BODNER's Social Security number and held at Principal Financial Group;

    xi. 9937020909 held at Citibank;

    xii. 760-059315 held at Morgan Stanley;

    xiii. 760-059317 held at Morgan Stanley;

    xiv. 760-059320 held at Morgan Stanley;

    xv. 760-059322 held at Morgan Stanley;

    xvi. 760-059328 held at Morgan Stanley;

    xvii. 760-059335 held at Morgan Stanley;

    xviii. 760-059336 held at Morgan Stanley;

    xix. 760-059337 held at Morgan Stanley

9

held at Morgan Stanley;

    xx. 760-059338 held at Morgan Stanley

  f. the 2006 Jaguar XJ automobile, bearing Vehicle Identification Number SAJWA86C56TG50669;

  g. the 2005 Audi A4 3.2T automobile, bearing Vehicle Identification Number WAUDG68E85A444693;

  h. the 2007 Audi A8 automobile, bearing Vehicle Identification Number WAUMR44E07N015533;

  i. the 2004 Jaguar XJR automobile, bearing Vehicle Identification Number SAJEA73B24TG06675;

  j. the 2008 Buick Enclave automobile, bearing Vehicle Identification Number 5GAEV23728J184067; and

  k. the 2002 Infiniti QX4 automobile, bearing Vehicle Identification Number JNDRD09Y92W260283.

### Substitute Asset Provision

13. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value;

or

    e.  has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

    (Title 18, United States Code, Sections 982(a)(1),
        982(a)(2), 1341, 1343, and 1346;
    Title 28, United States Code, Section 2461.)

*[signature]* MAA
MICHAEL J. GARCIA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

MARTIN S. BODNER,

Defendant.

INFORMATION

08 Cr. _____ (PKC)

(Title 18, United States Code,
Sections 1341, 1343, 1346 & 2.)

MICHAEL J. GARCIA,
United States Attorney.

---

March 31, 2008 - Information filed. March 31, 2008 - The defendant Martin S. Bodner and his attorney Matthew I. Menchel are present; AUSA Daniel Levy is present. Court Reporter Jenny Ronson is present. See transcript. The defendant waives indictment. The defendant is arraigned and pleads not guilty. The Court schedules a pretrial conference for April 30, 2008 at 10:00 a.m. Time excluded. Bail is continued.

Castel J.